DAVID D. MITCHELL, Respondent, *v.* THOMAS HANDFIELD, Appellant.

*Confirmations.*—A confirmation by the old board of commissioners in 1810 is superior to any title subsequently acquired from the United States.

*Confirmation—Relation.*—A confirmation ordered to be surveyed according to the concession, which had been surveyed under the Spanish Government, was a confirmation of a definite tract of land, and the subsequent proceedings by survey and patent relate to the time of the inception of the proceedings before the board of commissioners.

*Confirmation—Public Schools.*—A survey and setting apart to the public schools, made in 1845, by virtue of the 2d section of the act of Congress of June 13, 1812, is an inferior title to a confirmation of the board of commissioners in 1810, surveyed and patented in 1852.

## *Appeal from St. Louis Land Court.*

This was an action in the nature of ejectment, for a lot of thirty feet front, on the east side of Nineteenth street, by one hundred and twenty-seven feet deep, in the city of St. Louis, and in United States survey number three hundred and eighty, and being a portion of the ground between the west line of United States survey three thousand three hundred and thirty-three, made February 26, 1852, for the confirmation to Louis Labeaume, and the west line of survey two thousand nine hundred and seventy-four, made May 2, 1833, for the same confirmation.

On the trial, the plaintiff read in evidence the petition of Louis Labeaume for three hundred and sixty arpens of land; a concession and order of survey for same by Zenon Trudeau, dated February 15, 1799, and also survey made by Antoine Soulard for said land, dated April 10, 1799. Also, the proceedings of the old board of commissioners on said claim, and the confirmation thereof, made September 22, 1810. Also, order of survey made June 14, 1811. Also, commissioners' certificate No. 983, dated June 14, 1811. Also, copy of United States survey 3333, approved February 26, 1852, and patent certificate thereon, dated on said day; and a patent to Louis Labeaume dated March 25, 1852, for the land embraced in said survey 3333. Also, a deed from said La-

beaume to William Chambers for the entire tract, dated April 27, 1817, and a deed from William Chambers to William Christy and Thomas Wright for one-third of said land to each; and then deduced title by conveyance from the heirs of William Christy and Thomas Wright for two-thirds, undivided, of all that part of said tract lying between surveys 3333 and 2974. It was admitted that defendant was in possession of the lot at the commencement of the suit. Plaintiff then closed.

Defendant then read in evidence an assignment, made in regular form, by the United States surveyor general for Missouri and Illinois, of a tract of land one by forty arpens, made March 31, 1845, to the board of president and directors of the St. Louis Public Schools, under acts of Congress of June 13, 1812; May 26, 1824, and January 27, 1831, being United States survey 380, under instructions from the commissioner of the General Land Office, dated January 15, 1839, and February 18, 1839. Also, said survey 380. Then deduced title by conveyance from the said schools to himself. Also, United States survey No. 2974, made May 2, 1833, for the tract confirmed to Louis Labeaume. Also, survey made by Joseph C. Brown, in November, 1817, of confirmation certificates 982 and 983. Then proved by a witness that William Chambers stated that he had a patent certificate, issued on the survey of 1833, which he had lost, and he advertised to recover it that he might procure a patent thereon, conformably to said survey; which declarations were made long after his deed of 1817 to Christy and Wright. Then gave evidence tending to show that long prior to 1845 a fence stood along or about the western line of said survey of 1817, which fence was erected by Chambers, Christy and Wright, the owners of the entire tract in 1817, which fence the evidence tended to show was treated by William Chambers, one of said proprietors, as enclosing up to the western line of the southern part of the tract which was held by him in severalty—this evidence, relative to declarations and conduct of William Chambers, after the partition of said land.

Defendant then offered to prove by declarations of William Chambers, made after a division of that part of the tract within the survey of 1817 into lots, and a partition of said lots into three shares—one of which shares was taken by William Chambers, one by William Christy, and one by Thos. Wright —that he (Chambers) considered said fence as the western boundary of said entire tract; to which evidence the plaintiff objected, and the Land Court excluded the said evidence; to which defendant excepted, and then closed.

The plaintiff, in rebuttal, gave evidence tending to prove that neither the survey of 1817 nor the one made in 1833 were approved by the United States; that the one made in 1852, No. 3333, was made in pursuance of the decision of the Secretary of the Interior of July 15, 1851, and then closed.

Plaintiff asked the following instructions:

"1. The court instructs the jury that by the act of 13th June, 1812, and the second section thereof, and of the 27th January, 1831, the surveyor general was not authorized to set apart to the board of Public Schools any lots which were, on the 13th of June, 1812, rightfully owned or claimed by any private individuals. And the court further instructs the jury that the patent given in evidence by the plaintiff established the fact (if it be genuine), that the land therein designated and granted was rightfully owned and claimed by Louis Labeaume on and prior to the 13th of June, 1812.

"2. If the land is part of the land granted by the patent to Louis Labeaume, or his representatives, and it was conveyed by said Labeaume, by the conveyance given in evidence, to William Chambers, and by Chambers to William Christy and Thomas Wright, to each of them the one-third, and the heirs of Wright and the heirs of William Christy conveyed their interest in said land derived from said Wright and Christy to the plaintiff, then the plaintiff is entitled to recover for the interest so acquired by him."

Which instructions were given; to which defendant duly excepted.

Mitchell v. Handfield.

Defendant asked the following instructions, which were refused, to which defendant duly excepted :

"1. If the jury find from the evidence that the survey No. 2974, given in evidence by the defendant, was duly made and approved by authority of the United States; that the same was assented to and accepted by the legal representatives of Louis Labeaume as the tract of land confirmed to said Labeaume; that a patent certificate thereon was duly issued, received and accepted by the said representatives, then the jury are instructed that the said survey is as against the title conveyed by the survey and designation to the board of president and directors of the St. Louis Public Schools, No. 380, School Lands given in evidence by defendant conclusive of the boundaries of the tract of land confirmed to Louis Labeaume as aforesaid.

"2. If the jury find from the evidence that the tract of land sued for is within a tract of land designated, surveyed and set apart, on the 31st day of March, 1845, for the St. Louis Public Schools; and if they further find the said land is within the limits of the survey No. 3333, given in evidence by plaintiff, which last mentioned survey was made under a confirmation of the old board of commissioners, on the 22d of September, 1810, which confirmation carried with it a condition that it was to be surveyed, and said confirmation was surveyed so as not to include any of the land in controversy in this suit until the time of the making of said last mentioned survey, then the title of the plaintiff is not such that he can recover as against the title of the St. Louis Public Schools."

Verdict for the plaintiff.

*Whittelsey*, for appellant.

I. The plaintiff took no title until the issue of his patent, March 25, 1852, as his claim was to be surveyed and patent issued. The words of the act of Congress are, "shall be confirmed." (West v. Cochrane, 17 How. 415 ; Stanford v. Taylor, 18 How. 412 ; Ledoux v. Black, 18 How. 475 ; Cou-

Mitchell v. Handfield.

sin v. Blanc, 19 How. 202, 10; Bryan v. Forsyth, 19 How. 334; Ballance v. Papin, 19 How. 343; Ballance v. Forsyth, 13 How. 18, 24; Lefevre v. Croncau, 11 La. 323; Slack v. Orillen, 11 La. 587; Lott v. Prodhomme, 3 Rob., La., 293; Metoyer v. Larenaudiere, 6 Rob, La., 139; Carondelet v. St. Louis, 1 Black; Sandford v. Willot, 19 How. 79.)

II. Before the date of plaintiff's patent, the United States, by act of 1831, and survey of 1845, had passed the title to the land sued for to the schools. The act and survey were equivalent to a patent, and thus defendant has the elder legal title. (Kissell v. Schools, 18 How. 19; Opinion of Secretary of Interior on School Surveys, Nov. 5, 1857; Bryan v. Forsyth, 19 How. 334: Marsh v. Brooks, 14 How. 513; as to effect of surveys, see McGill v. Somers, 15 Mo. 87, per Gamble, J.)

III. The plaintiff's title by patent does not, as to adverse claims, relate back to the date of confirmation certificate, so as to divest intermediate titles. Such intermediate titles, sales, &c., will be good. (Cousin v. Blanc, 19 How. 202, 210; Ledoux v. Black, 18 How. 475; see Louisiana cases above cited; 11 La. 323, 587; 3 Rob. 393; 6 id. 139; 19 How. 334, 343; 13 How. 24.) Landes v. Brant, 10 How., does not apply to adverse title under United States, but to adverse claimants under the same title. If carried further than this, it is overruled by the case of Bryan v. Forsyth, 19 How. 334, which holds that under a confirmation (to be surveyed) by act of Congress that title only relates back to approval of survey to let in defence of statute of limitations, although title would relate back to act of confirmation by Congress (in some cases) so as to defeat intervening titles, as in Marsh v. Brooks, 14 How. 513.

IV. The United States parted with its title to this land by the survey in 1845, and could not afterwards survey it for plaintiff. It was estopped by its own action, and the plaintiff, coming in by later title in 1852, was privy and also estopped. (Menard v. Massey, 8 How. 293; Kissell v. Schools, 18 How. 19.)

V. The patent and its recitals were no evidence as against the defendant of the truth of the facts recited, nor could said recitals destroy the effect of defendant's evidence of title to the land as surveyed for schools. Expressly so held, Marsh v. Brooks, 8 How. 223.

VI. Admitting, for argument's sake, that both parties have *prima facie* titles, the defendant has older survey and possession, and the plaintiff shows no right to the possession as against defendant's *prima facie* title. (Vasques v. Ewing, 24 Mo. 31; Somers v. McGill, 15 Mo. 80.)

*B. A. Hill*, for respondent.

I. By relation, this survey and patent related back to the confirmation of 1810 and the filing of the claim in 1806, and vested the legal title, as of the 26th February, 1806, in Labeaume. (Landes v. Brant, 10 How., U. S.) The confirmation to Labeaume was made in 1810 upon a Spanish survey of Soulard for Labeaume of 10th April, 1799. The United States survey of 1852 for Labeaume is a mere retracing of Soulard's survey of 1799. (Magwire v. Tyler, 1 Black, 195.)

II. By the 4th sec. of act of 1807, 1 L. L., p. 154, it is enacted that " the decision of the commissioners, when in favor of the claimants, shall be final against the United States, any act of Congress to the contrary notwithstanding." By the 6th sec. of act of 1807, the commissioners are required to give a certificate to the claimant stating that " he is entitled to a patent for a tract of land therein designated." The certificate to Labeaume stated that he was entitled to a patent for the land confirmed, according to the concession (*i. e.* survey of Soulard) from Trudeau to Labeaume, and order a survey at expense of the United States. (Act, 1807, § 7.)

III. Pursuant to this designation in the certificate, the United States has issued the patent for the land embraced within the Spanish survey of Soulard, being the concession in fact. By this act of confirmation, survey and patent, the title of the United States, as of 22d September, 1810, vested in Labeaume.

IV. Defendants claim under the 2d sec. of the act of 13th June, 1812, a field lot within Soulard's survey for Labeaume, as a vacant lot reserved for the schools, because " it was not rightfully owned or claimed by any private individuals." If this lot was confirmed to Labeaume, as I have shown, then it was rightfully owned and claimed by him, and the 2d sec. of the act of 1812 could have no effect to reserve the lot for the schools.

V. A direct grant of the field lot, by the 1st sec. of the act of 1812, would not have had any effect on the title of Mr. Labeaume, for the section contains a proviso " that nothing herein contained shall be construed to affect the rights of any person claiming the same lands, or any part thereof, whose claims have been confirmed by the board of commissioners for adjusting and settling claims to lands in the said Territory."

VI. *As to Estoppel.*—There is no privity in this case between the schools and Labeaume under the surveys by the United States. Labeaume's surveys of 1817, and 1833, and 1837, were set aside by the United States, and Labeaume cannot be estopped. No estoppel by surveys, unless the surveys are regarded as binding on the United States. (West v. Cochrane, 17 Howard ; Magwire v. Tyler, 1 Black, 195 ; Glasgow et al. v. Hortez, 1 Black, 595.)

*Dick,* for respondent.

I. The confirmation to Labeaume is a grant of title originating with the confirmation of 22d September, 1810, and the patent relates back to that date and cuts out intervening claims. The United States, in effect, parted with its claims by the confirmation. (Landes v. Brant, 10 How. 370–3 ; Burgess v. Gray, 16 How. 63 ; 10 How. 373–4 ; 16 How. 63 ; Strother v. Lucas, 12 Pet. 453 ; 10 How. 370.)

II. The patent related back to the origin of the title, which was the filing of the claim for confirmation, 26th February, 1806. (Landes v. Brant, 10 How. 373 ; Ross v. Borland, 1 Pet. 655.)

III. The confirmation in this case was for a specified tract of land then marked out on the surface of the earth, its locality and boundaries embodied in the claim and copied into the public records, and again incorporated into the confirmation. The survey set up by the defendant was unauthorized by law, and therefore illegal and void. (Menard v. Massey, 8 How. 293; Bissell v. Penrose, 8 How. 317; State v. Ham, 19 Mo. 602; Ledoux v. Black, 18 How. 473; Somers & McKee v. McGill, 15 Mo. 80; Easton v. Salisbury, 23 Mo. 105, which says, p. 105: "The cases to which reference has been made show that any location of the land made by an officer of the government whilst it was reserved from sale was purely void. If a reservation by the United States of land from sale renders a patent void, will not a confirmation or grant render a survey void?")

Is a survey a more effectual act to pass title than a patent?

BATES, Judge, delivered the opinion of the court.

This is an action in the nature of an ejectment. The plaintiff claims title under a confirmation to Louis Labeaume by the old board of commissioners in 1810.

The defendant claims title under the board of Public Schools by virtue of the 2d sec. of the act of Congress of the 13th of June, 1812, the acts of 26th May, 1824, and January 27, 1831.

The confirmation to Labeaume was surveyed in 1817, and again in 1833. These surveys were set aside by the Secretary of the Interior, and a new survey (No. 3333) made, which was approved February 26, 1852.

The surveys of 1817 and 1833 did not include the land in dispute; the survey No. 3333 did include it. In 1845, the surveyor general of Illinois and Missouri surveyed, designated and set apart for the use of schools, to the board of Public Schools, a tract of land which included the piece in dispute.

The defendant claims that, holding under the Public Schools, his title is better than that of the plaintiff holding under the confirmation and late survey for Labeaume.

A patent has been issued to Labeaume's representatives for the land surveyed in 1852.

The Supreme Court of the United States, in the case of Magwire v. Tyler, 1 Black, 195, decided that the Secretary of the Interior had authority to set aside the former survey and order another to be made.

We therefore regard the case as if no survey had been made prior to that of 1852, (No. 3333.) Certainly a confirmation by the old board of commissioners in 1810 is a superior title to any title subsequently acquired from the United States.

In some cases of confirmation, and for some purposes, the title does not attach to any particular land until the survey is made, but in this case Labeaume's claim before the board of commissioners was accompanied by a concession and Spanish survey, and the confirmation was therefore of a definite tract of land to which the title immediately attached.

It was ordered to be surveyed according to the concession, but the survey so ordered would only be a retracing of the lines run by the Spanish surveyor; or even if there had been an error in the Spanish survey, to be corrected by the United States survey, such error might, and probably would, have no effect to impair the definiteness of the tract confirmed. If there had been before the commissioners no evidence by which to identify the tract, the confirmation would operate as a grant, which, because of its vagueness, would attach to no land until it should be located by an United States survey.

In this case, the confirmation, being of a definite tract of land, took immediate effect, and the subsequent proceedings by survey and patent relate to the time of the inception of the proceedings before the board for the confirmation.

The title of the plaintiff under Labeaume is the elder and better title than that of the defendant under the Public Schools.

The judgment of the court below is affirmed, the other judges concurring.