## SHREWSBURY *v.* UNITED STATES.

A *quartermaster* contracted at Fort Leavenworth with A. that he, A., should *transport* to Fort Union, from Fort Leavenworth, all the military stores and supplies for which the quartermaster's department might require transportation from the one place to the other during the year 1865, provided that their weight should not exceed a weight specified.

Within the year, and before A. had been offered for transportation supplies to the weight specified, the *commissary of subsistence* at the same Fort Leavenworth, made a contract with B. and C., that they should *deliver* at the same Fort Union, a certain quantity of supplies, these last agreeing that the supplies should be of a certain sort and quality specified, and should be delivered within a certain time, and be subject to inspection, acceptance, or rejection by the officer receiving the same :

*Held,* that the making of the second contract was no infringement of the first.

*Held, further,* that the fact that B. and C. had borrowed from the quartermaster at Fort Leavenworth some of the corn which they delivered at Fort Union, under their contract (they having afterwards repaid it in kind), did not show that the government in making the second contract meant to evade its obligations under the first.

APPEAL from the Court of Claims; the case as found by that court being thus :

On the 27th of March, 1865, one Shrewsbury entered, at Fort Leavenworth, Kansas, into a contract with Colonel Potter, a *quartermaster* of the army there, by which it was agreed that he, Shrewsbury, should " receive " at any time from May to September, 1865, from the officers of the quartermaster's department, at Forts Leavenworth and Riley, and town of Kansas, all such military stores and supplies, as might "be turned over to him *for transportation* by the officer or agent of the quartermaster's department at any or all of the above-named places, and *transport* the same " to the officer of the quartermaster's department on duty at Fort Union, in the Territory of New Mexico, or any other depot that may be designated in that Territory.

In a subsequent article of the contract, Shrewsbury contracted to " *transport* all the military stores and supplies for which the quartermaster's department may require trans-

portation by contract, during the year 1865, provided that the weight of such military stores and supplies should not exceed in the aggregate 15,000,000 pounds." The article contained a clause thus:

"Nothing herein shall be so construed as to forbid or prevent the United States from using its own means of transportation for such service, whenever it may be deemed advisable to do so."

Under this agreement stores were furnished to Shrewsbury by the quartermaster's department to the amount of 14,200,000 pounds, for the transportation of which he was paid. He was prepared with the means of transportation, and ready to transport the remainder of the 15,000,000 pounds, which, under the contract, he was bound to carry; but it was not furnished to him for transportation.

On the 29th of September, 1865, Colonel Morgan, *commissary of subsistence* at Fort Leavenworth, entered into a contract with Fuller & Tiernan to deliver "to the officer of *the subsistence department*" at this same Fort Union, 18,000 bushels (or about 1,000,000 pounds), of shelled corn, on or before the 20th of December, 1865, the same to be "of the best quality, well sacked in new gunny-sacks, securely sewed with linen twine; free from dirt, cobs, or other foreign matter, and to be either yellow or white, but not mixed in the sacks." The contract proceeded:

"The parties of the second part agree that said corn shall be subject to the inspection, acceptance, or rejection of the officer receiving the same, and that if default shall be made by the said parties of the second part, or either of them, in the time of delivery, or any of the terms of this contract, the party of the first part, or any person acting for him on behalf of the United States, shall have power to purchase the corn in open market, and the said parties of the second part, and their sureties, shall be charged with the difference between the cost thereof and the price hereinafter stipulated to be paid to the said parties of the second part.

"For and in consideration of the faithful performance of the stipulations of this contract the said party of the first part

agrees to pay, or cause to be paid, to the parties of the second part, at the office of the commissary, of subsistence at Fort Leavenworth, Kansas, the sum of $8.54 for each and every bushel of corn *delivered and accepted* in accordance with the terms thereof, payment to be made on vouchers issued and certified by the officer receiving said corn."

This contract was entered into by Morgan with Fuller & Tiernan, in pursuance of an order received by the former from the commissary of subsistence at St. Louis, Missouri, requiring Morgan to send corn to New Mexico to the amount of about 1,000,000 pounds. It being too late in the season for Morgan to advertise for proposals for the corn, and to purchase it under advertisement in time to send it out by the government freighter, and, having an offer from Fuller & Tiernan, who were then furnishing corn to the quartermaster's department at Fort Leavenworth, to deliver the corn required for the subsistence department at Fort Union, he entered into the said contract with them. *This corn was to be sent to the said fort, not for the army, but to feed Mexicans or Indians.* Morgan urging Fuller & Tiernan to send the corn off, they borrowed from the quartermaster of Fort Leavenworth some corn which they were delivering to him; the said quartermaster lending it to Fuller & Tiernan, to accommodate the subsistence department, and to enable Fuller & Tiernan to begin on their contract sooner than they could do if they had to wait to get the corn from St. Louis.

The quantity of corn so lent by the quartermaster's department to Fuller & Tiernan was about one-half of the million pounds which they contracted to deliver at Fort Union; and the amount lent to them was afterwards returned by them, in kind, to the quartermaster's department at Fort Leavenworth. Fuller & Tiernan delivered at Fort Union 858,000 pounds of corn, all of which was received by the government on their contract. About 120,000 pounds of the corn they shipped for Fort Union was stopped and taken by the government at Fort Dodge.

Shrewsbury insisting that the making of this contract by

an officer of the United States, in September, 1865, and its performance, constituted a breach of his contract made with Colonel Potter in March of the same year, filed a petition in the court below, claiming as damages the profit on the transportation of about 800,000 pounds of corn, which, he insisted, should have been furnished for transportation on his contract, instead of being purchased and delivered under the contract with Fuller & Tiernan.

The Court of Claims held adversely to the petitioner and dismissed his claim.    He now appealed to this court.

*Mr. Durant, for the appellant,* contended that Shrewsbury, by his contract, had an exclusive right to carry whatever corn, up to 15,000,000 pounds, the military department of the government sent from Fort Leavenworth to Fort Union; and that in making the new contract, by which the right to deliver the same article at Fort Union was conceded to Fuller & Tiernan (he, Shrewsbury, not having yet carried the 15,000,000 pounds, nor so exhausted his right), the government had violated its contract with him; that the arrangement with those parties just named was but a device to evade the performance of their contract with him.

The learned counsel argued further, that any loan of supplies owned by the government to a private contractor, was a matter against public policy and illegal; and that the fact of such a loan in this case was a further proof of the truth of the position already taken, that the contract with Fuller & Tiernan was but a scheme to avoid the performance of the contract made with Shrewsbury.

*Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice HUNT delivered the opinion of the court.

It can hardly be denied by the most zealous advocate that the two contracts before us differ essentially in their nature and form.    The contract made with the claimant is a contract for the transportation of corn, at a price fixed, and in quantity not to exceed 15,000,000 pounds.    The sole duty

of the claimant under this contract was to carry and deliver the corn. He did not purchase it nor own it; he had nothing to do with its value or quality, and could neither make nor lose by a fluctuation in the value of the corn.

The later contract with Fuller & Tiernan, on the other hand, is strictly a contract for the purchase of 18,000 bushels of corn, to be delivered at a place and within a time named, and at a price specified, to be paid on the delivery and acceptance of the corn. In this case the corn is the property of Fuller & Tiernan until delivered. They purchase it; they own it. If the price of corn in the market varies essentially they will make a profit or be losers, according as the direction of the variation shall be. Their contract is to furnish the corn at Fort Union, New Mexico, and they are at liberty to obtain it from any source they choose. They have no claim for payment until delivery, and the United States have no ownership of the corn until delivery and payment.

The foundation, however, of the claimant's demand rests upon the identity of these dissimilar contracts. Having contracted to deliver to him for transportation all the corn of which the quartermaster's department required transportation from Fort Leavenworth to Fort Union, he insists that this contract is violated by a purchase by the subsistence department of the United States, made at Fort Leavenworth, of corn to be delivered by the seller of the same at Fort Union. This view cannot be sustained. There is not only not an identity, but there is not a similarity between the contracts. The making of the latter contract, and its performance, was not a breach of the former.

It is suggested in the claimant's brief that the proceeding of the United States in making the contract with Fuller & Tiernan was a device unfairly to evade the performance of the claimant's contract. No such fact is found by the Court of Claims, and their findings of fact are taken by us to be the facts in the case. We discover nothing in the case that would have justified the Court of Claims in coming to such conclusion. We should, at all times, be slow to sustain such an imputation upon the good faith of the government.

The claimant makes complaint that the quartermaster at Fort Leavenworth lent to Fuller & Tiernan a quantity of corn to be used by them in performance of their contract of sale with the commissary of subsistence; that the loan of corn was illegal, the title still remaining in the United States, and that this fact furnishes evidence that the second contract was a device and a pretence only. We have only to say on this branch of the case that the claimant is not invested with authority to supervise the transactions of the different departments of the government. Whether the commissary of subsistence had authority to make the contract with Fuller, whether there was an irregularity in the loan of corn to Fuller, and what was the motive of these dealings, are matters to be investigated by the War Department. They cannot be challenged by the claimant. He rests his claim for damages upon the making and performance of Fuller's contract. That contract has not been repudiated or objected to, so far as we know, by the proper authority. The record contains no evidence that any of the transactions are the subject of censure by the government.

The supplies contracted to be transported by the claimant were those of the quartermaster's department, that is, the supplies to be used for and by the army. The corn purchased by the commissary of subsistence was sent to New Mexico, not for the army, but to feed the Mexicans or Indians. The duties of the quartermaster's department, and of the department of subsistence, are separate and distinct. The departments are managed by different officers, whose authority is confined to the matters connected with their departments.

The contract to transport, in the case before us, relates to supplies for the quartermaster's department. The arrangement which is set forth as a violation of that contract related to supplies needed by the commissary of subsistence, a different subject entirely.

The duty of the commissary department, in general terms, is to feed the army, to provide supplies for its subsistence. Transportation is not understood to be among its

duties. That office belongs to the quartermaster's depart-
ment. What the commissary provides to feed the army it
is the duty of the quartermaster to transport to such points
as may be needed. Hence, in the case before us, it was in
the ordinary course of business, the contract for transporta-
tion being already made, and further supplies being needed,
that the purchase of the same should devolve on the commis-
sary department.

JUDGMENT AFFIRMED.