————o————

MARY L. TYLER, Appellant, *vs.* WM. WELLS, *et al.*, Respondents.

1. *Ejectment—Labeaume survey and patent of 1852 prevailed over Lirette confirmation and survey of 1826—Brazeau reservation—Magwire vs. Tyler, referred to.*—In ejectment for certain land in St. Louis, plaintiff's claim was based originally on a confirmation made in 1810 to Labeaume, "according to the Soulard survey in 1799." The first survey of the tract did not include the land in dispute. But it was set aside and a new survey made retracing the Soulard survey, which embraced that tract, and on this new survey, a patent was issued to Labeaume in 1852. Defendant claimed, by virtue of a confirmation to Lirette of "one by forty arpents" made in 1816 by act of Congress, under which the land in controversy was located by a United States survey in 1826. *Held,* that the Labeaume confirmation being of a definite tract of land, took immediate effect, and that the subsequent proceedings by survey and patent related back to the proceedings before the board in 1810 and prevailed against the confirmation to Lirette. The case of Magwire vs. Tyler originated in a dispute about locality, and in that case the titles of Brazeau & Labeaume were synchronous, and originated before the same board, and the survey locating the Brazeau tract within the Labeaume confirmation, was in that case held correct, but that decision did not determine the last Labeaume survey and patent issued thereon in 1852, to be invalid, except as to the Brazeau reservation.

*Appeal from St. Louis Circuit Court.*

*B. A. Hill,* for Appellant.

I. The confirmation to Louis Labeaume of 1810, "is valid against the United States," sec. 4 of Act of March 3, 1807, U. S. Stat. at Large, vol. 2, p. 441. It was a confirmation on actual inhabitation and cultivation on the 1st October, 1800, by Labeaume, U. S. Stat. vol. 2, pp. 324 and 440; and for the specific tract of land described in Soulard's survey of 1799 for Labeaume, on which the confirmation was made. (U. S. Stat. Vol. 2, pp 441–2, §§ 6, 7; West vs. Cochran, 17 How., 412, 413, and in Mitchell vs. Handfield, 33 Mo., 438.)

II. Whenever a confirmation is for a tract of land that can be located with certainty, the title passes by force of the confirmation alone. (Mitchell vs. Handfield, 33 Mo., 438; Landes vs. Brant, 10 How., 348, 370; Ott vs. Soulard, 9 Mo., 581, 600–2; Berthold vs. McDonald, 24 Mo., 126; Harrold vs. Simonds, 9 Mo., 326; Cottle vs. Sydnor, 10 Mo., 763; Landes vs. Perkins, 12 Mo., 238; Greyol vs. Chouteau, 19 Mo., 546; Grignon's lessee vs. Astor, 2 How., 319; Chouteau vs. Eckhart, 2 How. 344; Mackay vs. Dillon, 4 How. 421; LesBois vs. Bramell, *Id.* 449.)

III. The case of Magwire vs. Tyler, (8 Wall., 669) is made to turn on the question of legal title, and of the location of Brazeau's reservation. The court, in its second opinion puts the case simply on the ground that Magwire obtained a title to four by four arpents in the S. E. corner of Labeaume's patent, which was a superior legal title to the elder title of Labeaume. But it does not attempt to pass on the effect of the confirmation to Labeaume outside of the newly created reservation for Brazeau in the S. E. corner of Labeaume's patent. The confirmation to Labeaume therefore stands as valid for all the land outside of the reservation. The confirmation to Lirette in 1812 and 1816 is expressly excluded from operating, so as to affect or impair the confirmation to Labeaume of 1810. (U. S. Stat. at Large. Vol. 2, p. 748–50, 812; Vol. 3, pp. 121, 328, 329.)

The decision in Magwire vs. Tyler, recognizes the distinction between confirmations of tracts of land without ascertained boundaries, and confirmations with ascertained

boundaries. The confirmation to Brazeau was held in West vs. Cochran to be vague and undefined and to pass no title to Brazeau, until survey and patent. But the confirmation to Labeaume was held in West vs. Cochran to be according to Soulard's survey; so also in Mitchell vs. Handfield, its boundaries were ascertained.

*Glover & Shepley*, for Respondents.

I. The title of the defendants under Lirette, as a pure legal title, is older than the title under the patent to Labeaume. Our title was a perfect legal title on the 29th April, 1816, upon its location by survey of the United States. The title to Labeaume only became a perfect legal title in 1852, as the titles to lands confirmed by the first board were only to become perfect titles upon the issuing of the patent. Therefore, the naked legal title did not pass out of the United States, as to any land confirmed to Labeaume, until the issuing of the patent.

That the title of the United States passed out of it to Lirette's representatives, upon the survey thereof, upon the confirmation by the act of the 29th of April, 1816, both the words of the law and the decisions made upon it conclusively show. It needed no patent. (Aubichon vs. Ames, 17 Mo., 89 ; Marsh vs. Brooks, 14 How., 513–524.)

II. As the confirmation to Labeaume was a confirmation to be surveyed, and had no certain location, till 1852, (Cochran vs. West, 17 How., 403 ; Magwire vs. Tyler, 8 Wall., 650.) it was competent for the United States, by a subsequent grant, the location of which was defined by United States survey, made prior to 1852, to pass title to another. (Vasquez vs. Ewing, 42 Mo., 257 ; Menard vs. Massey, 8 How., 293 (308-9) ; Ledoux vs. Black, 18 How., 473, at page 475.)

NAPTON, Judge, delivered the opinion of the court.

This case depends on a single question—the construction to be given to the confirmation of the board of commissioners of Labeaume's claim in 1810.

The plaintiff claims under Labeaume : the defendant under Lirette, who in 1816 had a confirmation to one by forty arpents by act of congress, which confirmed generally the decisions of Recorder Bates. The first survey of the Labeaume tract made by the United States surveyor did not include the Lirette arpent now in dispute.

This survey was made by Jos. C. Brown, and followed the decision of the board in regard to quantity ; but the survey was set aside and a new survey made, conforming it to Soulard's survey, and upon this new survey a patent issued to Labeaume in 1852.

There is no dispute that the last survey and the patent thereon cover the land in controversy. The question is, whether the last survey (No. 3,333) is to be understood as a correct survey of the confirmation in 1810. The defendants insist that the confirmation was of 356 arpents, and therefore that the survey of Soulard, which was for 374 arpents, was virtually rejected by the board; whilst it is urged on the other side, that the confirmation was of a tract of land surveyed by Soulard under the directions of Trudeau, and that Soulard's survey was confirmed.

If the court adopts the opinion in Mitchell vs. Handfield, (33 Mo., 431,) and in West vs. Cochran, (17 How., 412) there could be no question on this point. But since the decision of these cases the supreme court of the United States in Magwire vs. Tyler, (8 Wal., 669) it is said have overruled these opinions.

The case of Magwire vs. Tyler is a peculiar one, originating in a dispute about locality, and really involving no question in regard to the construction of the acts of congress of 1805–7, etc., or the acts of the board of commissioners in 1810. The representatives of Brazeau insisted that their land was inside of the land confirmed and surveyed to Labeaume. The departments at Washington at first determined otherwise, and surveyed for Brazeau a tract south of, and outside of the Labeaume survey, and so long as this condition of affairs lasted, the courts here and at Washington recognized the right of the government to locate the Brazeau

reservation. But ultimately the government at Washington recognized Brazeau's claim to be inside of the Labeaume survey and grant, and it was accordingly so surveyed and patented in 1862, and this survey and patent were ultimately held to prevail over the survey and patent to Labeaume, though granted ten years thereafter.

But it will be observed that the titles of Labeaume and Brazeau were synchronous, and originated from the same board of commissioners. The dispute was as to their locality. The Brazeau representatives insisted from the beginning, that their claim was inside of the Labeaume survey, though the government surveyors located it outside and south of the ditch that formed the southern line of Labeaume's tract, and so it was patented to Brazeau's representatives; but they refused to accept the patent and this survey and patent were ultimately set aside, and the Brazeau tract of 4 by 4 arpents was located within the Labeaume tract and a patent issued in conformity to this location, and this title in the case of Magwire vs. Tyler, (18 Wall, 669) was held to be the best one. In the opinion of the court in this case, the Spanish survey of Soulard is criticised—in fact, held to be erroneous, and the patent issued thereon in 1852 is cited to show that it was subject to " valid adverse claims." How far this opinion was intended to affect the title under the confirmation of 1810 is not clear. It is held beyond dispute that this survey of Soulard embraced the Brazeau reservation. Beyond that it was unnecessary to go, and we are not prepared to say that the court meant to overturn the survey and patent *in toto* and force the representatives of Labeaume to prove their lines under Trudeau's grant. In other words, it was not, we think, the intention of the court to declare Soulard's survey and its retracement by the U. S. surveyor a mere nonentity, and place Labeaume's claim on the basis of grants under the acts of 1812, 1815, etc., in which the claimant has nothing to do but to prove his cultivation, possession, etc.

In West vs. Cochran and Mitchell vs. Handfield it was decided otherwise. The claim of Labeaume was considered a

definite one, fixed by a survey, and we do not understand the opinion in Magwire vs. Tyler, as authorizing the deduction that this survey and patent of 1852 were mere nullities.

The claim of Labeaume in 1810 was not to an indefinite tract of land. Judge Catron says in West vs. Cochran (17 How., 412): "In 1810, the board of commissioners confirmed the grant to Labeaume, according to Soulard's survey."

He then proceeds to state the survey and patent to Brazeau, and as the latter was located by the government outside of the Labeaume tract, he held that the court had no power to change it.

In Mitchell vs. Handfield, *supra*, the court observes, Bates, J., delivering the opinion: "In some cases of confirmations and for some purpose the title does not attach to any particular land until the survey is made; but in this case Labeaume's claim before the board of commissioners was accompanied by a concession and Spanish survey, and the confirmation was, therefore, of a definite tract of land, to which the title immediately attached. It was ordered to be surveyed according to the concession, but the survey so ordered could only be a retracing of the lines run by the Spanish surveyor; or even if there had been an error in the Spanish survey, such error might, and probably would have no effect to impair the definiteness of the tract confirmed. If there had been before the commissioners no evidence by which to identify the tract, the confirmation would operate as a grant which, because of vagueness, would attach to no land until it should be located by a United State survey. In this case, the confirmation, being of a definite tract of land, took immediate effect, and the subsequent proceedings, by survey and patent, relate to the time of the inception of the proceedings before the board of confirmation."

These cases decided by the supreme court of the United States and by this court are clearly conclusive of the present, unless they have been overruled by the case of Magwire vs. Tyler, (8 Wall. 669).

But, although there is in this last decision a basis from which such deductions might be drawn, I see nothing in the conclusion reached to justify such an inference. The survey 3,333 and the patent thereon have not been decided as invalid, except so far as the Brazeau reservation is concerned, and the recognition of this Brazeau title does not deny the validity but determines the locality of this reservation within the survey made to Labeaume.

The survey and patent to Labeaume have not been set aside. They date from 1810, and the title under Lirette in 1816 is no defense. If it was the intention of the supreme court in Magwire vs. Tyler to go farther than to sustain the Brazeau claim and destroy the Labeaume title, so far as it depended on surveys and patents, they have not so declared, and we decline to draw such inferences.

The judgment of the Circuit Court must therefore be reversed and the cause remanded.